# EXHIBIT A



 **KINETIC**
A D V I S O R S

**Registered Office**
Kinetic Advisors LLC
845 3rd Ave 6th Floor
New York, NY 10022

July 9, 2009

Mr. Marc Sherman
Chairman and CEO
QSGI, Inc.
400 Royal Palm Way
Palm Beach, FL 33480

Dear Mr. Sherman:

This letter confirms and sets forth the terms and conditions of the engagement between Kinetic Advisors LLC ("Kinetic") and QSGI, Inc. (the "Company"), including the scope of services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Company and Kinetic.

1.      Description of Services

      a.      Team.   In connection with this engagement, Kinetic shall make available to the Company:

            (i)      Richard Cartoon, to serve as the Company's Chief Restructuring Officer (the "CRO"); and

            (ii)     Such additional personnel as are necessary to assist in the performance of the duties set forth in clause 1.b below (the "Additional Personnel").   Such Additional Personnel shall be utilized as advisory professionals.

      b.      Duties.

            (i)      The CRO, together with Additional Personnel, in cooperation with the senior management team of the company, shall assist the Company with short and long term cash flow projections and analysis as necessary for the Bankruptcy Court;

            (ii)     The CRO and Additional Personnel shall assist the Company with the preparation of financial and operational reporting requirements as required by the Bankruptcy Court;

            (iii)    The CRO and Additional Personnel shall serve as the principal contact with the Company's creditors with respect to the Company's financial and operational matters;

            (iv)    The CRO and Additional Personnel shall assist the Company with formulating a plan of reorganization and associated filings;

     (v)     The CRO and Additional Personnel shall assist the Company with securing necessary financing including potential debtor-in-possession financing as well as necessary financing to fulfill requirements under the plan of reorganization and emerge from bankruptcy protection;

     (vi)     The CRO and any Additional Personnel shall assist the Company with the sale of assets as necessary to maximize the value of the estate;

     (vii)     The CRO perform such other services as requested or directed by the Board and the Company's senior management team and agreed to by such other officer; and

     (viii)     Provide court testimony as required.

c.     <u>Reporting.</u> The CRO shall report to the Board.

d.     <u>Employment by Kinetic.</u> The CRO and any Additional Personnel will continue to be employed by Kinetic or their existing current employer while rendering services to the Company and will continue to work with other personnel at Kinetic in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement. With respect to the Company, however, the CRO shall operate under the direction of the Board.

e.     <u>Projections, Reliance, Limitation of Duties.</u> You understand that the services rendered by the CRO and any Additional Personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward looking statements. In addition, the CRO and Additional Personnel will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CRO, any Additional Personnel nor Kinetic makes any representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternatives will be accepted by any of the Company's creditors, shareholders, and other constituents. Further, neither the CRO and any Additional Personnel, nor Kinetic assumes responsibility for the selection of any restructuring proposal or strategic alternative that any such officer assists in formulating and presenting to the Board, and the CRO and any Additional Personnel shall be responsible for implementation only of the proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

f.     <u>Additional Responsibilities.</u> Upon mutual agreement of the Company and Kinetic, Kinetic may provide other services, in addition to those above, on such terms and conditions and for such compensation as the Company and Kinetic shall agree.

2.     <u>Compensation</u>

a.     Kinetic will be paid monthly by the Company for the services of the CRO at a rate of $500 per hour. Any Additional Personnel will be paid at the following hourly billing rates. The current hourly billing rates for other Kinetic personnel, based on the position held by such Kinetic personnel in Kinetic are:



|      |                                                          |             |
| ---- | -------------------------------------------------------- | ----------- |
| i.   | Senior Managing Directors                                | $600-$700   |
| ii.  | Managing Directors and Directors                         | $300-$500   |
| iii. | Vice Presidents, Associates and Paraprofessionals        | $100-$300   |

Such rates shall be subject to adjustment annually at such time as Kinetic adjusts its rates generally.

b.      In addition, Kinetic will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO and Additional Personnel, incurred in connection with this assignment, such as travel, lodging, duplications, computer research, messenger, and telephone charges. Kinetic charges a flat rate of 3% of the monthly and hourly professional fees billed to cover otherwise unbilled items difficult to estimate such as telephone charges, computer use, in-house copying, facsimiles and other internal services. In addition, Kinetic shall be reimbursed by the Company for the reasonable fees and expenses of its counsel incurred in connection with the preparation, negotiation and enforcement of this Agreement. All fees and expenses due to Kinetic will be billed on a weekly basis and due upon receipt.

c.      The CRO will be reimbursed for time incurred in travel at a rate of 50% of the normal applicable hourly rate.

d.      The Company and Kinetic recognize that it is possible that Kinetic may be entitled to incentive compensation for its services hereunder.  Should the Company and Kinetic determine such compensation to be appropriate, Kinetic's engagement terms will be modified accordingly and such modification will be subject to bankruptcy court approval.

3.      <u>Term</u>

The engagement will commence as of the date hereof and may be terminated by either party without cause by giving 30 days' written notice to the other party. Kinetic normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for Kinetic to continue to represent the company, or unless other just cause exists. In the event of any such termination, any fees and expenses due to Kinetic shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Company may immediately terminate Kinetic's services hereunder at any time for Cause by giving written notice to Kinetic. Upon any such termination, the Company shall be relieved of any and all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such termination) and its obligations under paragraphs 7 and 8. For purposes of this Agreement, "Cause" shall mean if (i) the CRO or any of the Additional Personnel is convicted of, admits to guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony; (ii) the CRO or any of the Additional Personnel willfully disobeys a lawful direction of the Board; or (iii) a material breach of any of Kinetic's or the CRO or any of the Additional Personnel material obligations under this Agreement which is not cured within 30 days of the Company's written notice thereof to Kinetic describing in reasonable detail the nature of the alleged breach. For purposes of this Agreement, termination for "Good Reason" shall mean its resignation caused by a breach by the Company of any of its material obligations under this Agreement that is not cured within 30 days of Kinetic having given written notice of such breach to the Company describing in reasonable detail the nature of the alleged breach.



4.   <u>No Audit, Duty to Update</u>

It is understood that the CRO, any Additional Personnel and Kinetic are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company. The CRO, any Additional Personnel and Kinetic are under no obligation to update data submitted to them or review any other areas unless specifically requested by the Board to do so.

5.   <u>No Third Party Beneficiary</u>

The Company acknowledges that all advice (written or oral) given by Kinetic to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board of and management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Kinetic's prior approval (which shall not be unreasonably withheld), except as required by law.

6.   <u>Conflicts</u>

Kinetic is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.

7.   <u>Confidentiality/Non-Solicitation</u>

The CRO and Additional Personnel and Kinetic shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.  Except as specifically provided for in this letter, the Company on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of Kinetic who worked on this engagement while employed by Kinetic ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment or otherwise engage any Solicited Person and should such offer be accepted, Kinetic shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 2,000 hours.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

8.   <u>Indemnification</u>

The Company shall indemnify the CRO from any loss, cost or expense arising from any claim, suit or cause of action against the CRO arising from any acts or omissions alleged to have occurred during the term of the engagement. This indemnification obligation shall be to the fullest extent permitted by applicable law, including advancement of retainers and reimbursement of reasonable attorneys' fees and costs incurred in connection with the defense of any claim, suit or cause of action against the CRO, and shall continue after the termination of the Engagement for a period of three years or such longer period as may be reasonably required to fully indemnify



the CRO as set forth above. The Company shall also cause the CRO to be named as an additional insured under the Company's current policies of directors' and officers' liability insurance, shall continue such coverage in effect and without reduction or exclusion as to the CRO throughout the term of the engagement, and upon termination of the engagement shall provide "tail coverage" to the CRO for a period of three years or such longer period as may be reasonably required to fully indemnify the CRO, at no expense to the CRO. In addition to the above indemnification, Kinetic and its affiliates, employees, subcontractors, agents, shareholders, representatives, managers and members will be subject to further indemnification pursuant to the Indemnification Agreement below.

9.    <u>Miscellaneous</u>

Kinetic has relationships with, and may periodically use, independent contractors such as Tatum LLC with specialized skills and abilities to assist in this engagement. Kinetics standard practice is to charge for a contractor's services at Kinetic's rate for a professional of comparable skill and experience, which rate typically exceeds the compensation provided by Kinetic to such contractor.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and Kinetic agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or Kinetic hereunder. The Company and Kinetic agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

KINETIC ADVISORS, LLC

By: _____

   Name: Sudhir Roy
   Title: Senior Managing Director

Accepted and Agreed:

QSGI, INC.

By: _____
Name:  Marc Sherman
Title:  Chairman and CEO

---

**KINETIC ADVISORS LLC**
**GENERAL TERMS AND CONDITIONS**

---

### INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated July 9, 2009 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Kinetic Advisors LLC ("Kinetic ") and QSGI, Inc. (the "Company"), for services to be rendered to the Company by Kinetic.

A.      The Company agrees to indemnify and hold harmless each of Kinetic, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel and others (including employees of Kinetic, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Kinetic, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified party from all liabilities arising out of such claim, action suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or Kinetic's and its personnel's role under the Agreement, Kinetic or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or Kinetic or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

---

**KINETIC ADVISORS LLC**
**GENERAL TERMS AND CONDITIONS**

---

such motion, action, or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.    Neither termination of the Agreement nor termination of Kinetic's engagement nor the filing of a petition under Chapter 7 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.


QSGI, INC.                                KINETIC ADVISORS LLC

By: _____              By: _____
     Name:  Marc Sherman                       Name:  Sudhin Roy
     Title:   Chairman and CEO                  Title:   Senior Managing Director