

**ORDERED in the Southern District of Florida on September 15, 2009.**

Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Chapter 11 Cases |
| QSGI, INC., | Case No.: 09-23658-EPK |
| QSGI-CCSI, INC. | Case No.: 09-23659-EPK |
| QUALTECH SERVICES GROUP, INC. | Case No.: 09-23660-EPK |
| Debtors. _____/ | Jointly Administered |

**ORDER GRANTING IN PART AND DENYING IN PART DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING AND SCHEDULING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DCM DIVISION OF QUALTECH SERVICES GROUP, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (B) APPROVING BIDDING PROCEDURES AND STALKING HORSE PROTECTIONS; (C) APPROVING THE NOTICE OF SALE; (D) SCHEDULING AN AUCTION TO ACCEPT HIGHER AND BETTER BIDS; AND (E) SCHEDULING HEARING TO APPROVE SALE ARISING OUT OF AUCTION PURSUANT TO 11 U.SC. §363**

THIS MATTER came before the Court for hearing on September 9, 2009 at 10:00 a.m. upon the motion of the Debtors-in-Possession, QSGI, Inc., QSGI-CCSI, Inc. and QualTech Services Group, Inc. (collectively, the "Debtors") for entry of an Order (a) authorizing and

1

scheduling the sale of substantially all of the assets of the Data Center Maintenance Business ("DCM") division of Qualtech Services Group, Inc. (the "Seller") free and clear of all liens, claims, and encumbrances; (b) approving bidding procedures and stalking horse protections; (c) approving the notice of sale; (d) scheduling an auction to accept higher and better bids; and (e) scheduling a hearing to approve the sale arising out of the auction, pursuant to 11 U.S.C. §§ 363 and/or 105(a) and Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy Procedure and Local rule 6004-1 (the "Bid Procedures Motion") (DE 103). The Court, having reviewed the Bid Procedures Motion, having taken judicial notice of the Court file in this case in its entirety, and being otherwise duly advised in the premises, and good cause having been shown therefore, does FIND and CONCLUDE as follows:

    A.    The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334, and this matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M), and (O);

    B.    Written notice of the Bid Procedures Motion having been provided to all interested parties entitled to receive notice under the Federal Rules of Bankruptcy Procedure;

    C.    The Debtor has relied upon sound and adequate factual and legal bases in support of the relief sought in the Bid Procedures Motion raised at this hearing;

Accordingly, the Court does ORDER and ADJUDGE as follows:

    1.    The Bid Procedures Motion is **GRANTED IN PART AND DENIED IN PART**.

    2.    The Debtors are authorized to sell substantially all of the Assets[1] of the DCM division of the Seller free and clear of all liens, claims, encumbrances and interests, pursuant to Section 363(f) of the Bankruptcy Code (the "Sale"), with any such liens, claims, encumbrances and interests attaching to the proceeds of the Sale. The Assets include, without limitation,

---

[1] All capitalized terms shall have the meaning ascribed to them in the Bid Procedures Motion, unless otherwise noted herein.

customer contracts, lists, leads, records and all client-related files; computer hardware and software and physical testing equipment used to support customer contracts; intellectual property and all other general business intangibles and goodwill, including tools of the trade, business processes; inventory and accounts receivable.

3. Importantly, the following assets (the "Excluded Assets") shall be excluded from the Sale: (i) the Seller's cash or cash equivalent prior to the closing; (ii) any claims and/or causes of action the Seller may have against third parties, including, without limitation, commercial tort claims and chapter 5 causes of action; (iii) any and all shares in QualTech International Corporation; QualTech International Acquisition, Corporation; QSGI-DPV Inc.; QualTech Services Group, Inc.; QualTech Services Acquisition, Corporation; QSGI-CCSI, Inc.; and Contemporary Computer Services, Inc.; (iv) any and all assets in QualTech International Corporation; QualTech International Acquisition, Corporation; QSGI-DPV Inc.; QualTech Services Group, Inc.; QualTech Services Acquisition, Corporation; QSGI-CCSI, Inc.; and Contemporary Computer Services, Inc.; (v) all prepaid corporate expenses; (vi) all corporate assets of QSGI, Inc. as a parent company, including, without limitation, insurance policies, including, without limitation, general liability and directors and officers insurance policies and any proceeds thereof; and (vii) the corporate shell of the Seller.

4. The Purchaser shall submit an executed asset purchase agreement to counsel for the Debtors and Victory Park by September 15, 2009 and the Debtors shall file said asset purchase agreement with the Court.

5. The proposed break-up fee payable to the Purchaser from the sale proceeds is **APPROVED IN PART**. The Purchaser shall be paid all actual, reasonable fees, expenses and costs, including, without limitation, any and all reasonable attorneys', accountants' and financial

advisory fees and expenses, incurred by Purchaser or any of Purchaser's representatives, agents, and employees in connection with its investigation, negotiation, structuring and financing of Purchaser's proposed acquisition of the DCM division of the Seller, including all matters relating to or arising out of this Order (collectively, the "Break-Up Fee").

6. The Purchaser shall be entitled to payment of the Break-Up Fee and the Purchaser's Deposit (a) upon entry of an order authorizing the sale of the Assets to a competing bidder (an "Alternative Transaction"), (b) upon withdrawal of the motion to authorize the sale of the Assets to the Purchaser or such other higher and better bidder, (c) if the Seller is unable to close the sale of the Assets through no fault of the Purchaser, or (d) if the Seller chooses not to sell the Assets to the Purchaser or any competing bidder. The Purchaser shall be paid the Break-Up Fee from the first proceeds from the sale of the DCM division or, if there are no sale proceeds, the Purchaser shall be granted a super-priority secured claim pursuant to section 364 of the Bankruptcy Code in an amount equal to the Break-Up Fee. Prior to payment of the Break-Up Fee, the Purchaser shall provide via e-mail to the Debtors, Victory Park and the United States Trustee's Office invoices, receipts and/or other documentation (the "Break-Up Fee Documentation") substantiating the amount of the Break-Up Fee (subject to redaction for attorney-client privilege). The Debtors, Victory Park and the United States Trustee's Office shall have ten (10) calendar days (the "Break-Up Fee Objection Period") from their receipt of the Break-Up Fee Documentation to file a written objection (the "Break-Up Fee Objection(s)") to payment of the Break-Up Fee. The Break-Up Fee Objection Period will not begin until the Purchaser e-mails the Break-Up Fee Documentation to the Debtors, Victory Park and the United States Trustee's Office. Any Break-Up Fee Objections shall be set for hearing by the Court. Counsel for the Debtors shall reserve from the first proceeds of the sale of the DCM division, in

its non-interest escrow account, an amount equal to One Hundred Percent (100%) of the Break-Up Fee proposed by the Purchaser in the Break-Up Fee Documentation until the Court rules upon any Break-Up Fee Objections. The Purchaser shall be paid the Court approved Break-Up Fee within two (2) business days after the Court enters an Order on the Break-Up Fee Objection(s). In the event that no Break-Up Fee Objections are filed, the Purchaser shall be paid the Break-Up Fee within two (2) business days after the expiration of the Break-Up Fee Objection Period.

7. The Notice of Bid Procedures attached hereto as Exhibit "A" is **APPROVED** in its entirety.

8. The deadline for all parties to complete due diligence is September 18, 2009.

9. All Qualified Bidders shall be required to submit Qualified Bid Packets to the Debtors and Victory Park **on or before 5:00 p.m. on September 18, 2009.**

10. In order to qualify as a bidder, a prospective purchaser must provide the following items on or before **September 18, 2009** (the "Bid Deadline"):

> A. a deposit of ten percent of the bid price (the "Deposit") payable by bank cashier's check or wire transfer into the non-interest bearing escrow account of Shraiberg, Ferrara & Landau, P.A. along with the SSN or EIN of the bidding person or entity;
>
> B. an executed asset purchase agreement. The executed asset purchase agreement shall be substantially similar to the Purchaser's but for the purchase price and any competing bid must not contain any contingencies to the validity, effectiveness and/or binding nature of the offer, including without limitation, contingencies for financing, due diligence or inspection, other than those contained in the Purchaser's asset purchase agreement. <u>**THE COURT SHALL NOT APPROVE ANY SALE TO A POTENTIAL BIDDER THAT HAS NOT EXECUTED THE ASSET PURCHASE AGREEMENT**</u>;
>
> C. the amount they are willing to pay for the assets of the DCM division of the Seller, but in no event shall this amount be less than $2,425,000.00 (the "Initial Bid");

5

D.  such other information as is reasonably requested by the Seller or Victory Park;

E.  Current financial statements of the potential bidder, or such other form of financial disclosure acceptable to the Seller and its advisors demonstrating the potential bidder has sufficient financial resources to close the sale by September 22, 2009 and

F.  the bidder's address, telephone and facsimile numbers where the bidder may be contacted.

("Qualifying Bid Packet").

11.  The Purchaser shall be deemed a Qualified Bidder (defined below) and a stalking horse bidder (the "Stalking Horse Bidder") upon completion of the following two conditions:

A.  The Purchaser deposits a certified check or wire transfer into the non-interest bearing escrow account of Shraiberg, Ferrara & Landau, P.A. in the amount of $200,000.00 (the "Purchaser's Deposit"), by September 9, 2009.

B.  By September 15, 2009, the Purchaser shall submit an executed asset purchase agreement (in a form mutually agreed upon the Purchaser and the Debtors) to counsel for the Debtors and Victory Park. In the event that the Debtors and the Purchaser fail to come to an agreement on an asset purchase agreement by September 15, 2009, the Debtors shall return the Purchaser's Deposit on or before September 18, 2009.

The Purchaser will not be a Qualified Bidder (defined below) or entitled to the stalking horse protections, including payment of the Break-Up Fee, if the Purchaser fails to provide the Purchaser's Deposit by September 9, 2009, or the Debtors and the Purchaser fail to come to an agreement on an asset purchase agreement on or before September 15, 2009, in which case Purchaser shall be entitled to the return of the Purchaser's Deposit on or prior to September 18, 2009.

12.  The Qualifying Bid Packet must be delivered with the items described above no later than **5:00 p.m. E.S.T. on September 18, 2009** to: Philip J. Landau, Esq., Shraiberg, Ferrara & Landau, P.A., Counsel for Debtors, 2385 NW Executive Center Dr., Suite 300, Boca Raton, Florida 33431, Telephone (561) 443-0800, Facsimile No. (561) 998-0047; Howard J. Berlin, Esq., Berger Singerman, P.A., Counsel for Victory Park, 200 South Biscayne Blvd., Suite 1000, Miami, Florida 33131, Telephone (305) 755-9500, Facsimile (305) 714-4340 and Scott Zemnick, General Counsel for Victory Park, 227 W. Monroe Street, Ste. 3900, Chicago, IL 60606, Telephone (312) 705-2786, Facsimile (312) 701-0794 and John P. Sieger, Katten Muchin Rosenman, LLP, Counsel for the Purchaser, 525 West Monroe Street, Chicago, IL 60661-3693, Telephone (312) 902-5294, Facsimile (312) 577-8681. The bidder's Qualifying Bid Packet must include the bidder's address, telephone and facsimile numbers where the bidder may be contacted.

13.  Prior to the Auction, the Seller, in consultation with Victory Park, shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s) "Qualified Bidders" as well as their offer to purchase the Assets. By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

14.  The Seller shall file and serve upon all interested parties entitled to receive notice, including the holders of qualified bids ("Qualified Bids"), a summary of the Qualified Bids to be considered at the Auction no later than **September 18, 2009** (the "Qualified Bid Summary"). This requirement is waived in the event that there are no Qualified Bids. The Seller shall notify all Qualified Bidders, no later than **7:00 p.m. E.S.T. on September 18, 2009**, that they may

participate in the Auction.

15.     The Auction shall be conducted by Court and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Assets of the Debtors, in minimum bid increments of $50,000.00 or increments as otherwise decided by the Court. The Auction shall conclude when the Court receives what is determined by the Debtors and Victory Park to be the highest and best offer to purchase the Assets (the "Successful Bid"). The Court may also identify an acceptable Back-Up Bid.

16.     The Purchaser shall not have a right of first refusal to acquire the Assets for a purchase price equal to the highest and best offer made by a competing bidder.

17.     Pursuant to section 363(k) of the Bankruptcy Code, at the Auction so long as Purchaser has terminated its bid, Victory Park, in its sole and absolute discretion, may submit one or more bids (or back up bids), and if Victory Park is the Successful Bidder, Victory Park may offset its claim against the purchase price. Victory Park is not required to submit a Qualifying Bid Packet in order to credit bid at the Auction. Victory Park agrees to waive its deficiency claim with respect to any recovery from claims and/or causes of action the Seller possesses under Chapter 5 of the Bankruptcy Code.

18.     Except as otherwise stated herein, each Deposit shall be maintained in a **non-interest** bearing account and subject to the jurisdiction of this Court. Within five (5) business days from the entry of an order approving the Sale, the Debtors shall return all Deposits to all Qualified Bidders except the Successful Bidder or the person who submitted the Back-Up Bid (the "Back-Up Bidder"), whose Deposit shall be applied by the Seller against the purchase price at the closing. In the event that the Successful Bidder closes the Sale, the Seller shall return the Back-Up Bidder's Deposit within five (5) business days from the closing. In the event the

Purchaser closes on the purchase of the Assets, its Deposit shall be applied by the Seller against the purchase price. If the Purchaser is the Successful Bidder but fails to close, the Debtors shall refund the Purchaser's Deposit to the Purchaser, unless the failure to close constitutes a breach by the Purchaser under its asset purchase agreement.

19. All Qualified Bidders and the Purchaser shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the Sale. All asset purchase agreements and the Purchaser's LOI shall be governed by and construed in accordance with the laws of the State of Delaware. All Qualified Bidders and the Purchaser, if Purchaser executes an asset purchase agreement by **September 15, 2009**, shall be bound by their bids until conclusion of the Auction. If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit to the Seller, if said failure to close constitutes a breach of the operative asset purchase agreement, and the Seller may close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Bidder's asset purchase agreement no later than five (5) days thereafter. If the Back-Up Bidder, if any, is unable or unwilling to close the Sale in the time permitted, the Back-Up Bidder shall forfeit its Deposit to the Seller, if said failure to close constitutes a breach by the Back-Up Bidder of the operative asset purchase agreement.

20. An Auction shall be conducted on **September 21, 2009 at 9:30 a.m. at the U.S. Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, Room 801, West Palm Beach, Florida 33401**. Following the Auction, on **September 21, 2009 at 10:30 a.m.**, the Court shall conduct a hearing to approve the sale arising out of the Auction (the "Sale Hearing").

21. The Debtors shall file, as soon as practicable, a Cure Notice listing the cure amounts for all contracts and leases that may be assumed and assigned to a successful bidder. The deadline for creditors to file objections to cure amounts is **September 18, 2009**. Any unresolved objections to cure amounts shall be considered by the Court at the Sale Hearing.

22. The closing shall occur on the earlier of **September 22, 2009**, or one business day after entry of Final Order approving the Sale.

23. The Debtor is authorized to immediately serve the Notice of Bid Procedures and a copy of this Order pursuant to Bankruptcy Rules 6004(a), (c), and 2002(a)(2) upon: (a) those persons who in any way contacted Debtor or any of its representatives regarding the sale of the Debtor's Assets; (b) those persons who the Debtor has reason to believe may possess an interest in purchasing the Assets; (c) the U.S. Trustee; (d) counsel to Victory Park; (e) the Internal Revenue Service; (f) the landlords of the Seller's lease and the licensors of Seller's computer software and other intellectual property; (g) the respective equipment lessors of the Seller; (h) all other parties who have filed a notice of appearance; and (i) all other creditors.

24. The Successful Bidder in the Auction shall constitute a good faith purchaser of Debtor's Assets pursuant to 11 U.S.C. § 363(m) such that the reversal or modification on appeal of the sale of Debtor's Assets to the Successful Bidder shall not affect the validity of the sale to the Successful Bidder whether or not the Successful Bidder knew of the pendency of the appeal.

25. This Order expressly waives the stay requirement enumerated in Federal Rule of Bankruptcy Procedure Rule 6004(h), such that entry of an Order approving the sale of Debtor's Assets shall not be subject to an automatic ten (10) day stay.

###

Submitted by:

John E. Page
Florida Bar No. 860581
**SHRAIBERG, FERRARA & LANDAU, P.A.**
2385 NW Executive Center Dr., Suite 300
Boca Raton, Florida  33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047

Copies to:
John E. Page
[Attorney John E. Page is directed to serve a conformed copy of this Order to all interested parties immediately upon receipt and shall file a certificate of service with the Clerk].

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Chapter 11 Cases |
| QSGI, INC., | Case No.: 09-23658-EPK |
| QSGI-CCSI, INC. | Case No.: 09-23659-EPK |
| QUALTECH SERVICES GROUP, INC. | Case No.: 09-23660-EPK |
| Debtors. | |
| _____/ | Jointly Administered |

### NOTICE OF OPPORTUNITY TO SUBMIT BIDS
### FOR SUBSTANTIALLY ALL OF THE ASSETS OF THE DCM DIVISION OF
### <u>QUALTECH SERVICES GROUP, INC.</u>

**PLEASE TAKE NOTICE that:**

1. The United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court") has entered an Order pursuant to 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure: (a) authorizing and scheduling the sale of substantially all of the assets of the Data Center Maintenance ("DCM") division of Qualtech Services Group, Inc. (the "Seller") free and clear of all liens, claims, and encumbrances; (b) approving bidding procedures and stalking horse protections; (c) approving the notice of sale; (d) scheduling an auction to accept higher and better bids; and (e) scheduling a hearing to approve the sale arising out of the auction, pursuant to 11 U.S.C. §§ 363 and/or 105(a) and Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy Procedure and Local rule 6004-1 (the "Bid Procedures Order")[1].

2. Pursuant to the Bid Procedures Order[2], the Debtors[3] have received authorization

---

[1] A copy of the Bid Procedures Order may be obtained: (a) in person, during regular business hours, from the Office of the Clerk of the Bankruptcy Court, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401: (b) downloaded from the Bankruptcy Court's electronic docket (CM/ECF); or (c) upon written request to Debtor's counsel listed below.
[2] In the event of any discrepancy between the terms of this Notice and the terms of the Bid Procedures Order, the



from the Bankruptcy Court to employ the procedures set forth herein for consideration of competitive bids for purchase of the Assets, including, establishing deadlines and certain criteria for submitting Qualified Bids; the selection of a Stalking Horse Bidder; approval of bidding protections and overbid requirements; and the scheduling of the Auction.

3.      In accordance with the Bid Procedures Order, this notice is being served by e-mail, facsimile and/or U.S. Mail pursuant to Bankruptcy Rules 6004(a), (c), and 2002(a)(2) upon: (a) those persons who in any way contacted Debtor or any of its representatives regarding the sale of the Debtors' Assets; (b) those persons who the Debtors have reason to believe may possess an interest in purchasing the Assets; (c) the U.S. Trustee; (d) counsel to Victory Park; (e) the Internal Revenue Service; (f) the landlords of the Sellers' leases and the licensors of Seller's computer software and other intellectual property; (g) the respective equipment lessors of the Seller; (h) all other parties who have filed a notice of appearance; and (i) all other creditors.

## STALKING HORSE BID

4.      The Court has approved a Letter of Intent presented by Systems Maintenance Holding, Inc. ("Purchaser") for the purchase of substantially all of the assets of the DCM division of the Seller for the sum of $2,000,000.00 (the "Purchase Price"). In addition, the Purchaser shall assume deferred revenue obligations under certain customer contracts not to exceed $15,000 in the aggregate and debtor in possession (DIP) financing not to exceed $300,000 (with repayment terms to be mutually agreed upon between the parties). With the exception of these items, Seller shall retain all (and Buyer shall not assume any) other liabilities and obligations. Furthermore, to the extent that, as of the Closing, the outstanding DIP financing obligation exceeds $300,000, the Purchase Price shall be reduced on a dollar-for-dollar basis by

---

Bid Procedures Order shall govern and control.
[3] All capitalized terms not expressly defined herein have the meaning ascribed to such term in the Bid Procedures Order.

such excess. Similarly, if the deferred revenue obligations exceed $15,000 in the aggregate, the Purchase Price shall be reduced on a dollar-for-dollar basis by such excess except to the extent the net value of the accounts receivable included in the Assets (net of appropriate reserves) as of the closing exceeds $500,000. Furthermore, to the extent that, as of the closing, (a) the aggregate book value of the inventory included in the Assets (net of appropriate reserves) is less than $700,000, the Purchase Price shall be reduced on a dollar-for-dollar basis by such shortfall and (b) the aggregate book value of the accounts receivable included in the Assets (net of appropriate reserves) is less than $500,000, the Purchase Price shall be reduced on a dollar-for-dollar basis by such shortfall except to the extent that as of the closing the outstanding DIP financing obligation is less than $300,000.

## ELIGIBILITY TO MAKE BIDS

5.      Any person who wishes to participate in a competitive bidding process for the purchase of the Assets (the "Auction"), must satisfy the requirements set forth below to become a Qualified Bidder. Neither the Debtors, Victory Park nor the Court shall consider bids that are not proposed by a Qualified Bidder.

## BIDDING PROCESS

6.      A person may be qualified to participate in the Auction if by the bid deadline of **September 18, 2009** (the "Bid Deadline"), they provide:

   a. a deposit of ten percent of the bid price (the "**Deposit**") payable by bank cashier's check or wire transfer into the non-interest bearing escrow account of Shraiberg, Ferrara & Landau, P.A. along with the SSN or EIN of the bidding person or entity;

   b. an executed asset purchase agreement. The executed asset purchase agreement shall be substantially similar to the Purchaser's but for the purchase price and any competing bid must not contain any contingencies to the validity, effectiveness and/or binding nature of the offer, including without limitation, contingencies for financing, due diligence or inspection, other than those contained in the Purchaser's asset purchase agreement. **THE COURT SHALL NOT APPROVE ANY SALE TO A POTENTIAL BIDDER THAT HAS NOT EXECUTED**

3

**THE ASSET PURCHASE AGREEMENT**;

      c. the amount they are willing to pay for the assets of the DCM division of the Seller, but in no event shall this amount be less than $2,425,000 (the "**Initial Bid**");

      d. such other information as is reasonably requested by the Seller or Victory Park or other Secured Creditors;

      e. current financial statements of the potential bidder, or such other form of financial disclosure acceptable to the Seller and its advisors demonstrating the potential bidder has sufficient financial resources to close the sale by September 22, 2009 and

      f. the bidder's address, telephone and facsimile numbers where the bidder may be contacted.

(the "Qualifying Bid Packet").  The Qualifying Bid Packet must be delivered with the items described above no later than **5:00 p.m. E.S.T. on September 18, 2009** to:  Philip J. Landau, Esq., Shraiberg, Ferrara & Landau, P.A., Counsel for Debtors, 2385 NW Executive Center Dr., Suite 300, Boca Raton, Florida 33431, Telephone (561) 443-0800, Facsimile No. (561) 998-0047; Howard J. Berlin, Esq., Berger Singerman, P.A., Counsel for Victory Park, 200 South Biscayne Blvd., Suite 1000, Miami, Florida 33131, Telephone (305) 755-9500, Facsimile (305) 714-4340; Scott Zemnick, General Counsel for Victory Park, 227 W. Monroe Street, Ste. 3900, Chicago, IL 60606, Telephone (312) 705-2786, Facsimile (312) 701-0794 and John P. Sieger, Katten Muchin Rosenman, LLP, Counsel for the Purchaser, 525 West Monroe Street, Chicago, IL 60661-3693, Telephone (312) 902-5294, Facsimile (312) 577-8681.  The bidder's Qualifying Bid Packet must include the bidder's address, telephone and facsimile numbers where the bidder may be contacted.

      7.   Upon satisfaction of all of the requirements set forth above, the Seller in consultation with Victory Park, shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s)

"Qualified Bidders" as well as their offer to purchase the Assets. By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

8. Between the Bid Deadline and the Auction and during the Auction, the Debtors may, in its discretion and in consultation with Victory Park, discuss, negotiate or seek clarification of any Qualified Bid.

9. The Seller shall file and serve upon all interested parties entitled to receive notice, including the holders of qualified bids ("Qualified Bids"), a summary of the Qualified Bids to be considered at the Auction no later than **September 18, 2009** (the "Qualified Bid Summary"). This requirement is waived in the event that there are no Qualified Bids. The Seller shall notify all Qualified Bidders, no later than **7:00 p.m. E.S.T. on September 18, 2009**, that they may participate in the Auction.

## THE AUCTION

10. An Auction shall be conducted on **September 21, 2009 at 9:30 a.m. at the U.S. Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, Room 801, West Palm Beach, Florida 33401**. Following the Auction, on **September 21, 2009 at 10:30 a.m.**, the Court shall conduct a hearing to approve the sale arising out of the Auction (the "Sale Hearing").

11. The Auction shall be conducted by Court and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Assets of the Debtors, in minimum bid increments of $50,000.00 or increments as otherwise decided by the Court. The Auction shall conclude when the Court receives what is determined by the Debtors and Victory Park to be the highest and best offer to purchase the Assets (the "Successful Bid"). The Court may also identify an acceptable Back-Up Bid.

12.     Pursuant to section 363(k) of the Bankruptcy Code, at the Auction so long as Purchaser has terminated its bid, Victory Park, in its sole and absolute discretion, may submit one or more bids (or back up bids), and if Victory Park is the Successful Bidder, Victory Park may offset its claim against the purchase price. Victory Park is not required to submit a Qualifying Bid Packet in order to credit bid at the Auction. Victory Park agrees to waive its deficiency claim with respect to any recovery from claims and/or causes of action the Seller possesses under Chapter 5 of the Bankruptcy Code.

13.     Except as otherwise stated herein, each Deposit shall be maintained in a **non-interest** bearing account and subject to the jurisdiction of this Court. Within five (5) business days from the entry of an order approving the Sale, the Debtors shall return all Deposits to all Qualified Bidders except the Successful Bidder or the person who submitted the Back-Up Bid (the "Back-Up Bidder"), whose Deposit shall be applied by the Seller against the purchase price at the closing. In the event that the Successful Bidder closes the Sale, the Seller shall return the Back-Up Bidder's Deposit within five (5) business days from the closing. In the event the Purchaser closes on the purchase of the Assets, its Deposit shall be applied by the Seller against the purchase price. If the Purchaser is the Successful Bidder but fails to close, the Debtors shall refund the Purchaser's Deposit to the Purchaser, unless the failure to close constitutes a breach by the Purchaser under its asset purchase agreement.

14.     All Qualified Bidders and the Purchaser shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the Sale. All asset purchase agreements and the Purchaser's LOI shall be governed by and construed in accordance with the laws of the State of Delaware. All Qualified Bidders and the Purchaser, if Purchaser executes an asset purchase

6

agreement by **September 15, 2009**, shall be bound by their bids until conclusion of the Auction. If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit to the Seller, if said failure to close constitutes a breach of the operative asset purchase agreement, and the Seller may close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Bidder's asset purchase agreement no later than five (5) days thereafter. If the Back-Up Bidder, if any, is unable or unwilling to close the Sale in the time permitted, the Back-Up Bidder shall forfeit its Deposit to the Seller, if said failure to close constitutes a breach by the Back-Up Bidder of the operative asset purchase agreement.

## SUBMISSION OF INITIAL BIDS

15.  The Qualifying Packet and any related materials must: (a) be in writing; (b) contain all materials set forth in Paragraph 6 above; and (c) be submitted to the Debtors' counsel Victory Park's counsel and the Purchaser's counsel, so that it is received no later than **5:00 p.m. on September 18, 2009**, as follows:

> *To the Debtor:*
>
>> Philip J. Landau, Esq.
>> Shraiberg, Ferrara & Landau, P.A.
>> 2385 NW Executive Center Drive, Suite 300
>> Boca Raton, Florida 33431
>> Fax:  561-998-0047
>
> *To Victory Park:*
>
>> Howard J. Berlin, Esq.
>> Berger Singerman, P.A.
>> 200 South Biscayne Blvd., Suite 1000
>> Miami, Florida 33131
>> Fax:  312-701-0794

*To Systems Maintenance Services Holding, Inc.:*

    John P. Sieger, Esq.
    Katten Muchin Rosenman, LLP
    525 West Monroe Street
    Chicago, IL 60661-3693
    Facsimile (312) 577-8681

PLEASE TAKE FURTHER NOTICE THAT any inquiries regarding the foregoing should be directed to Debtors' counsel listed below.

    **Shraiberg, Ferrara & Landau, P.A.**
    Attorneys for the Debtors
    2385 N.W. Executive Center Drive, #300
    Boca Raton, Florida 33431
    Telephone: (561) 443-0800
    Facsimile: (561) 998-0047
    Email: jpage@sfl-pa.com

    By: /s/ *John E. Page*
        Philip J. Landau, Esq.
        Florida Bar No. 0504017
        John E. Page, Esq.
        Florida Bar No. 860581