UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QSGI, INC., | ) | Case No. 09-23658-BKC-EPK |
| QSGI-CCSI, INC., | ) | Case No. 09-23659-BKC-EPK |
| QUALTECH SERVICES GROUP, INC., | ) | Case No. 09-23660-BKC-EPK |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |

**DEBTORS, QSGI, INC., QSGI-CCSI, INC., AND QUALTECH
SERVICES GROUP INC.'S PLAN OF REORGANIZATION**


**DATED OCTOBER 8, 2010**


Respectfully Submitted,

*s/ Michael A. Kaufman*
**MICHAEL A. KAUFMAN, ESQ.**
Florida Bar No.: 628042
MICHAEL A. KAUFMAN, P.A.
1655 Palm Beach Lakes Boulevard, Suite 1012
West Palm Beach, Florida 33401
Telephone: (561) 478-2878
Facsimile: (561) 584-5555
Email: michael@mkaufmanpa.com
Counsel for the Debtors

I.    PLAN OF REORGANIZATION OF QSGI, INC., QSGI-CCSI, INC. AND QUALTECH SERVICES GROUP, INC. (collectively the "Debtors")

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Reorganization Plan, shall have the meanings set forth below:

**1.0    Definitions**

**1.01    "Additional Common Stock"** means new and additional common stock to be issued in the Reorganized Debtor as Distributions under the Reorganization Plan.

**1.02    "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Article 3 of the Reorganization Plan.

**1.03    "Administrative Expense Claim" or "Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtors' businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; and (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code.

**1.04    "Allowed"** means with reference to any Claim: any Claim (a) proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtors have not Filed an objection on or before the expiration of the time period set forth for the objection to such Claim in the Reorganization Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court fixing an objection date, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder; (b) listed on the Schedules, as amended, as other than disputed, contingent or unliquidated; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Reorganization Plan shall not be considered Allowed Claims hereunder); or (d) expressly allowed under or pursuant to the terms of the Reorganization Plan.

**1.05    "Assets"** means all remaining, post-sale assets and property of the Estates of the Debtors, regardless of whether reflected in the financial records of the Debtors, including but not limited to: the corporate shell, equipment, cash, deposits, refunds, rebates, abatements, fixtures, real property interests, contractual interests, intangibles, Claims, Causes of Action, Estate Litigation, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**1.06    "Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

**1.07    "Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.08    "Beneficiaries"** means holders of: (i) Allowed General Unsecured Claims in Class 4 entitled to receive Distributions under the Reorganization Plan; and (ii) Allowed Administrative Expense Claims.

**1.09** **"Business Combination"** means a business combination for the Reorganized Debtor with an appropriate candidate.

**1.10** **"Business Day"** means any day other than: (a) a Saturday; (b) a Sunday and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.11** **"Case"** means the bankruptcy cases of the Debtors (Bankruptcy Case Nos. 09-23658, 09-23659 and 09-23660, jointly administered, in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division).

**1.12** **"Cash"** means legal tender of the United States of America in the possession of or maintained in accounts owned by the Debtors.

**1.13** **"Causes of Action"** means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including (a) all statutory causes of action preserved for the Estate under Bankruptcy Code §§510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that the Debtor or the Estate may have against any Person.  Failure to list an avoidance action in this Plan does not constitute the Debtor's or the Estate's waiver or release of that avoidance action and (b) any and all other claims or rights of any value whatsoever at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement or in Article 8.6 of the Plan.  When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgment, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness or liabilities released or waived by order of the Bankruptcy Court or in writing by the Debtor.  A Cause of action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Causes of Action with specificity in the plan or in the Disclosure Statement; nor shall the Debtor or the Reorganized Debtor be estopped or precluded under any theory from pursuing the Causes of Action.  Nothing in the Plan operates as a release of any of the Causes of Action.

**1.14** **"Claim"** means any claim against the Debtors, regardless of whether asserted and regardless of whether known, as the term "claim" is defined in Section 101(5) of the Bankruptcy Code, and shall include, but is not limited to: Administrative Expense Claims; Disputed Claims; any claims arising from or related to any Equity Interests and Claims; General Unsecured Claims; Priority Claims; and Secured Claims.

**1.15** **"Class"** means each of the groups of holders of Claims or Equity Interests described in Article 5 of the Reorganization Plan and entitled to vote on the Reorganization Plan.

**1.16** **"Confirmation Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.17** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Reorganization Plan, as it may be adjourned or continued from time to time.

**1.18** **"Confirmation Order"** means an order of the Court confirming the Reorganization Plan under Section 1129 of the Bankruptcy Code that has become a Final Order.

**1.19** **"Court"** means the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division.

**1.20** **"Current Officers" and "Current Directors"** means the officers and directors of the Debtors prior to the Effective date.

**1.21** **"Debtors"** means QSGI, Inc., QSGI-CCSI, Inc. and Qualtech Services Group, Inc., prior to the Effective Date.

**1.22** **"Disclosure Statement"** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code, as same may be amended, with respect to the Reorganization Plan of the Debtors under chapter 11 of the Bankruptcy Code, including all exhibits, appendices, and schedules thereto, if any, as same may be amended, modified, or supplemented from time to time.

**1.23** **"Disclosure Statement Approval Order"** means a Final Order granting approval the Disclosure Statement.

**1.24** **"Disputed Claim"** means a Claim or any portion thereof: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtors have Filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding Claim listed in the Schedules by the Debtors; (d) for which no corresponding Claim has been listed in the Schedules by the Debtors; (e) on behalf of which Claim the Claim holder has received consideration, in whole or in part, from another source on account of such Claim; (f) that is not an Allowed Claim; or (g) that is otherwise disputed by the Debtors in accordance with applicable law, and in regards to which such dispute has not been withdrawn or determined by a Final Order.

**1.25** **"Distribution"** means a distribution of stock or equity interests in the Reorganized Debtor, or such other property of the Estate, made in accordance with the Reorganization Plan.

**1.26** **"Distribution Date"** means the date on which any Distribution shall be made in accordance with the terms of the Reorganization Plan.

**1.27** **"Effective Date"** means the date January 1, 2011 or a date earlier set by the Board of Directors of KruseCom, LLC.

**1.28** **"Entity" or "Entities"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**1.29** **"Equity Interest"** means: (a) any capital stock or other ownership interest in the Debtors; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the Debtors; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing; as they exist prior to the Effective Date.

**1.30** **"Equity Claims"** means: all Claims arising in connection with an Equity Interest, including, without limitation, Claims arising from the rescission of a purchase or sale of an equity security of the Debtors, for damages arising from the purchase or sale of such security, or for reimbursement or contribution under Section 502 of the Bankruptcy Code on account of such Claim and attorneys' fees associated therewith.

**1.31** **"Estate"** means the estate of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of the Case.

**1.32** **"Estate Litigation"** means all proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, Reorganized Debtor, or by any party on behalf of or for the benefit of the Estate, including, but not limited to, to recover preferences, fraudulent conveyances or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.

**1.33** **"File" or "Filed"** means, with respect to any pleading, entered on the docket of the Case and properly served in accordance with the Bankruptcy Rules.

**1.34** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, reconsideration, or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, reconsideration, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, reconsideration, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, reconsideration, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.35** **"General Unsecured Claim"** means an Allowed unsecured Claim that is not a Priority Claim, including Allowed rejection damage Claims asserted under the provisions of Article 9.2.

**1.36** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**1.37** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

**1.38** **"Lawful Holders"** shall be determined by the American Stock Transfer and Trust Company.

**1.39** **"Liabilities"** means the all the liabilities of the Debtors' Estate, whether or not reflected in the financial records of the Debtors.

**1.40** **"Lien"** has the meaning ascribed to that term in Section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided shall not constitute a Lien for the purposes of the Reorganization Plan.

**1.41** **"New Officers" and "New Directors"** means the officers and directors of Reorganized Debtor after the Effective Date.

**1.42** **"Petition Date"** means July 2, 2009, the date on which the Debtors Filed their voluntary chapter 11 petitions and commenced the Case.

**1.43** **"Priority Claim"** means any Allowed Claim of a kind specified in Sections 502(i) or 507(a)(4), (5), (7), or (8) of the Bankruptcy Code.

**1.44** **"Professional"** means any person or Entity employed by the Debtors pursuant to a Final Order in accordance with Sections 327 or 328 of the Bankruptcy Code, and to be compensated for services rendered prior to and after the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.45** **"Pro Rata Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class.

**1.46** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Reorganization Plan on account of Allowed Claims, which shall be the Confirmation Date.

**1.47** **"Released Parties"** or **"Released Party"** has the meaning ascribed thereto in Article 10.

**1.48** **"Reorganization Plan"** means this Reorganization Plan under chapter 11 of the Bankruptcy Code as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.49** **"Reorganized Debtor"** means QSGI, Inc. on or after the Effective Date.

**1.50** **"Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, members, representative, employee, agent, attorney, advisor, financial advisor, accountant, other Professional, their successors or assigns, Reorganized Tarpon or any person who is or was in control of any of the foregoing.

**1.51** **"Riconda Settlement"** means that certain settlement agreement between the Debtors and John Riconda as authorized by the *Order Granting Joint Motion for Approval of Settlement Agreement between Debtors and John Riconda Pursuant to Fed.R.Bankr.P. 9019 and Local Rule 9013-1* entered August 9, 2010.

**1.52** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in the Case pursuant to Section 521 of the Bankruptcy Court, and as such schedules and statements have been or may be supplemented or amended from time to time.

**1.53** **"SEC"** means the United States Securities and Exchange Commission.

**1.54** **"Secured Claim"** means an Allowed Claim that is secured by a Lien (which is valid, perfected and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the collateral securing such claim, as determined in accordance with Section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**1.55** **"Unclaimed Property"** means any Distributions that are returned as: (i) undeliverable to a Beneficiary, or (ii) unclaimed by a Beneficiary, as further described in Article 7 of the Reorganization Plan.

**1.56** **"Unimpaired"** means an Allowed Claim or Equity Interest that is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code.

**1.57** **"United States Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the Southern District of Florida.

**1.58** **"Victory Park"** means Victory Park Credit Opportunities Master Fund, Ltd. and Victory Park Management LLC.

## ARTICLE 2

## INTERPRETATION, APPLICATION OF DEFINITIONS,
## RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neuter.  For purposes of the Reorganization Plan: (a) any reference in the Reorganization Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Reorganization Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Reorganization Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Reorganization Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Reorganization Plan as a whole and not to any particular article, section, subsection, or clause contained in the Reorganization Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Reorganization Plan.

The headings in the Reorganization Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Reorganization Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Reorganization Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any Distribution, payment or act under the Reorganization Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution, payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE 3

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**3.1    Unclassified Claims**

As provided in Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Article 3 of the Plan and under Bankruptcy Code §1129(a)(9)(A).

**3.2    Administrative Expense Claims**

All Allowed Administrative Claims, which consist of Allowed post-petition Claims under Section 503(b) of the Bankruptcy Code, as well as Allowed prepetition Claims under Section 503(b)(9) of the Bankruptcy Code, if any, including all tax claims accruing post-petition, shall be paid in cash, in full, on the later of (i) the due date or thirty (30) days after entry of a Final Order of the Bankruptcy Court Allowing such Administrative Claim, (ii) thirty (30) days after entry of a Final Order of the Bankruptcy Court confirming the

Reorganization Plan; or (iii) as and when the holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtor, as the case may be, agree.

**3.3    Statutory Fees**

All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid (i) if due and owing, within fourteen (14) days after confirmation of the Reorganization Plan, and (ii) if arising post Confirmation Date, as and when due.

**3.4    Professional Compensation**

In the case of Administrative Claims of all Professionals, Professionals shall file final fee applications for services provided to or for the benefit of the Debtors within thirty (30) days after the Confirmation Date.

Subject to the provisions of this section 3.3, once approved, the Administrative Claims of Professionals shall be paid in accordance with the payment of Allowed Administrative Claims set forth above in Section 3.1 of the Reorganization Plan, other existing or subsequent orders of the Court, or as may otherwise be agreed between the Debtors and the Professionals, including by way of granting of stock in the Reorganized Debtor.

**3.5    Preserved Ordinary Course Administrative Claims.**

Each Allowed Preserved Ordinary Course Administrative Claim will be paid in full in Cash at Reorganized Debtor's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized Debtor's business. Payments will be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**3.6    Administrative Claim Bar Date**

Any requests for the payment or allowance of an Administrative Claim (other than the Administrative Claims of Professionals, which are dealt with in Section 3.3, above, and Claims under Section 503(b)(9)) shall be discharged and barred forever and shall not be enforceable unless such request for the payment of an Administrative Claim is Filed and served upon Debtors on or before the date that is thirty (30) days after entry of the Confirmation Order, or if the Court has previously entered an order in this bankruptcy Case granting a creditor an Administrative Claim, such creditor serves a copy of the order granting such Administrative Claim upon the Debtors within such thirty (30) day period.

**3.7    Post-Confirmation Date Professional Fees**

All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Case and this Plan including those relating to consummation of this Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Preserved Litigation Claims, and the resolution of Disputed Claims, will be paid by Reorganized Debtor on receipt of an invoice, or on other terms on which Reorganized Debtor and the Professional agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized Debtor has ten days after receiving a Professional's invoice to object to any item contained in that invoice. If Reorganized Debtor and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to the Professional, the Bankruptcy Court will determine that amount.

**3.8     Allowed Priority Tax Claims**

Any Allowed Priority Tax Claim will be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtor or Reorganized Debtor may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan. If the Debtor or Reorganized Debtor so elects, the installment payments will be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment will be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after that date as practicable; and (c) another date on which the holder of the Claim and the Debtor or Reorganized Debtor agree. Debtor and Reorganized Debtor, as the case may be, retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

## ARTICLE 4

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Reorganization Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is an Allowed Claim.

The classification of Claims and Equity Interests of the Debtors pursuant to the Reorganization Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Allowed Priority Claims | Not Impaired – not entitled to vote |
| Class 2 | Allowed Claim of Victory Park | Impaired – entitled to vote |
| Class 3 | Allowed Claim of John Riconda | Impaired – entitled to vote |
| Class 4 | Allowed General Unsecured Claims | Impaired – entitled to vote |
| Class 5 | Equity Interests and Claims – Preferred Stockholders | Impaired – entitled to vote |
| Class 6 | Equity Interests and Claims – Common Stockholders | Impaired – entitled to vote |

## ARTICLE 5

## TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS UNDER THE REORGANIZATION PLAN; ACCEPTANCE OR REJECTION OF THE REORGANIZATION PLAN

The following treatment set forth in this Article 5 shall be accorded to Allowed Claims against, and Equity Interests in, the Debtors.

### 5.1    Impaired Claims

#### 5.1.1    Class 1: Allowed Priority Claims

Class 1 consists of all Priority Claims.  Each Holder of an Allowed Priority Claim shall be paid (a) on the Effective Date, an amount, in Cash by the Reorganized Debtor equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) as otherwise agreed to by the Debtor and the Holder of an Allowed Priority Claim, or (c) as otherwise ordered by a Final Order of the Bankruptcy Code.

Class 1 is not Impaired, and the holders of Class 1 Allowed Claims are deemed to have accepted the Reorganization Plan.

#### 5.1.2    Class 2:  Allowed Claim of Victory Park

Class 2 consists of the Allowed Claim of Victory Park. Contingent upon entry of the Confirmation Order, Victory Park shall have an Allowed Claim in the amount of $150,000 against the Reorganized Debtor (the "Post Confirmation Claim"), which Post Confirmation Claim shall accrue interest at eight percent (8%) per annum and be paid in eight (8) equal installments commencing 120 days after the Confirmation Date, and continuing each 90 days thereafter until paid in full in cash. Upon payment in full of the Post Confirmation Claim, including interest thereon, all Liens, claims and interests of Victory Park in the Debtor's corporate shell, and any other Assets or stock of the Debtors or the Reorganized Debtor shall be waived, released and terminated. Victory Park shall not be entitled to any other Distributions or payments of any kind but for the Post Confirmation Clam. The amount of 4,125,000 shares of restricted stock will be deemed returned by VPC to the corporate treasury of the Debtor upon confirmation of the Plan of Reorganization and VPC will not receive any additional distribution under the Debtors' Plan of Reorganization.  No further action will be required by the Reorganized Debtors.

Class 2 is Impaired.

#### 5.1.3    Class 3:  Allowed Claim of John Riconda

Class 3 consists of the Allowed Claim(s) of John Riconda ("Riconda") pursuant to the Riconda Settlement. As set forth in the Riconda Settlement, Riconda holds an Allowed Unsecured Claim against QSGI, Inc. in the amount of $10,159,000. However, pursuant to the Riconda Settlement, Riconda shall not be entitled to any Distributions, payments or other interests under the Reorganization Plan or in the Reorganized Debtor on account of his Allowed Claim. On account of 13,500,000 shares of restricted stock will be deemed returned by Riconda to the corporate treasury of the Debtor upon confirmation of the Plan of Reorganization and Riconda will not receive any additional distribution under the Debtors' Plan of Reorganization.  No further action will be required by the Reorganized Debtors.

Class 3 is Impaired.

### 5.1.4    Class 4:  Allowed General Unsecured Claims

Class 4 consists of all Allowed General Unsecured Claims. Unless the Debtors or the Reorganized Debtor, and the holder of such Allowed General Unsecured Claim agree to a different treatment, and subject to the provisions of this Reorganization Plan, each holder of an Allowed General Unsecured Claim shall receive a pro-rata Distribution of $1,000,000 in value of Additional Common Stock in the Reorganized Debtor, or up to a maximum aggregate of 10,000,000 shares of Additional Common Stock. The value of the Additional Common Stock shall be based upon the 5-day trading price average of Debtors shares as traded on the public market the week prior to the Effective Date of the Reorganization Plan.

Class 4 is Impaired, and is entitled to vote to accept or reject the Reorganization Plan.

### 5.1.5    Class 5: Equity Interests and Claims – Preferred Stockholders

Class 5 consists of all Equity Interests and Claims of preferred shareholders.

Preferred stockholders:  Under the Reorganization Plan, the present lawful owners of preferred stock in the Debtors shall have their shares converted to an aggregate of 425,000 shares of common stock in the Reorganized Debtor, to be distributed pro-rata among the preferred shareholders.  The preferred shareholders are Pike Capital Partners, LP and Guerilla Partners, LP.

Class 5 is Impaired.

### 5.1.6    Class 6: Equity Interest and Claims – Common Stockholders

Common Stockholders and other Equity Interests: The Lawful Holders of common stock in the Debtors and all other Equity Interests and Claims shall retain all common stock and Equity Interests under the Reorganization Plan.

Class 6 is Impaired.


## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    Each Impaired Class Entitled to Vote Separately.

Except as otherwise provided in Article 6.4 or in any enforceable intercreditor contract or agreement, the Holders of Claims or Interests in each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan. In the event an impaired class fails to submit a vote by the deadline designated by the Court, said class will be deemed to have accepted the Plan.

### 6.2    Acceptance by Impaired Classes.

Classes 2, 3, 4, 5, and 6 are Impaired under the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) or more than one-half in

number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

**6.3    Presumed Acceptance of Plan by Unimpaired Classes.**

Class 1 is Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan, and thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor or the Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**6.4    Impairment Controversies.**

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Class of Interests, is Impaired under the Plan, such Claim, Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Interest or a particular Class of Claims or Class of Interests, under the Plan.

**ARTICLE 7**

**MEANS FOR EXECUTION OF REORGANIZATION PLAN**

**7.1    Restructuring Transaction**

The events and matters set forth in this Article 6 (the "Restructuring Transaction") shall occur on or after the Effective Date, and shall be effective as of the Effective Date. The purpose of the restructuring plan established by this Plan shall be to create a marketable entity which shall merge with KruseCom, LLC (as more fully described in the Disclosure Statement), or an entity to be formed by, affiliated with or related to KruseCom, LLC upon a future date. By virtue of receiving equity in the Reorganized Debtor, the General Unsecured Creditors will benefit from the Reorganized Debtor's planned acquisition or merger with KruseCom, LLC. The General Unsecured Creditors will receive Additional Common Stock in the Reorganized Debtor in the amount set forth in this Plan, and consistent with Article 5.1.4. The ultimate effect of the Restructuring Transaction upon the Effective Date of the Reorganization Plan will be the Reorganized Debtor having been authorized to issue up to 2,000,000,000 shares of common stock. The Reorganized Debtor will be capitalized in part by KruseCom, LLC in a sufficient sum to allow it to engage in and operate the core business of the Reorganized Debtor, but only to the extent of the completion of periodic SEC filings and the resolution, settlement and/or satisfaction of all claims of the Internal Revenue Service. The Reorganized Debtor and KruseCom, LLC shall use their best good faith efforts to implement the Restructuring Transaction.

**7.2    Continued Existence of Reorganized Debtor.**

The Reorganized Debtor's existence shall continue after the Effective Date. The Reorganized Debtor will not have any liability for any pre-petition Claims against any of the Debtors other than obligations expressly set forth in this Reorganization Plan and Claims against Reorganized Debtor shall be

discharged pursuant to Section 1141 of the Bankruptcy Code. The entry of the Confirmation Order will be deemed to meet or obviate the need for all necessary shareholder approval or notice requirements under applicable law necessary to implement the Reorganization Plan or to amend its corporate charter to meet the requirements of the Reorganization Plan. Each officer or director of the Reorganized Debtor will be authorized to file all necessary documentation to effectuate the transactions contemplated by this Reorganization Plan.

**7.3     Issued Additional Common Stock Under Restructuring Transaction**

Issuance of Additional Common Stock. Upon the Effective Date, the Reorganized Debtor shall be authorized to issue up to 2,000,000,000 shares of common stock. Notwithstanding the total number of shares authorized to be issued, as soon as is practicable after the Effective Date, the Reorganized Debtor shall issue up to (i) 10,000,000 shares (or such number of shares of Additional Common Stock with aggregate value of no more than $1,000,000) of Additional Common Stock to the holders of Allowed General Unsecured Claims; (ii) 160,000,000 shares of Additional Common Stock to KruseCom, LLC, (iii) up to 10,000,000 shares of Additional Common Stock for issuance to key third parties vital to the ongoing success of the Reorganized Debtor ("Key Third Parties"), and (iv) up to 425,000 shares of Additional Common Stock to present holders of preferred shares in the Debtors, so that the following approximate capital structure of the Reorganized Debtor shall be effectuated:

Capital Structure:

|  | Effective Date | Fully Diluted |
|---|---|---|
| KruseCom | 80.96% | 76.95% |
| Legacy Common Stockholders | 13.18% | 12.52% |
| Unsecured Creditors | 4.26% | 4.05% |
| Convertible Preferred | 0.18% | 0.17% |
| Michael A. Kaufman, P.A.[1] | 1.42% | 1.35% |
| Key third party | 0.00% | 0.91% |
| Working Capital Stock Issuance | 0.00% | 4.05% |

After issuance of the Additional Common Stock, the Reorganized Debtor is authorized, and may in its sole discretion and without any further notice or shareholder approval, perform a reverse of up to 50:1 stock split in order to reduce the total number of shares outstanding in the Reorganized Debtor ("Stock Split"). For example, the effect of a 20:1 reverse stock split would be to reduce the total number of issued shares in Reorganized Debtor from approximately 236,928,000 shares to 11,846,386 shares. The Stock Split would not affect the overall capital structure of the Reorganized Debtor.

There is currently on deposit in the Trust Account of Michael A. Kaufman, P.A., the amount of $50,000.00 which has been set aside for distribution to the General Unsecured Creditors by way of Court Order. Upon the Effective Date of the Debtors' Plan of Reorganization, said amount will be released by Michael A. Kaufman, P.A. to the Reorganized Debtors to be utilized as operating capital. The firm of Michael A. Kaufman, P.A., will be duly authorized to make such transfer upon confirmation of the Debtors' Plan of Reorganization and no further application to the Court will be necessary for such authority.

---

[1] Subject to a final fee application and approval by the Court.

**7.4     Articles of Incorporation and Bylaws**

The Articles of Incorporation and Bylaws of the Reorganized Debtor shall contain provisions necessary to prohibit the issuance of nonvoting equity securities as required by Section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Articles of Incorporation and Bylaws as permitted by applicable law. The Reorganized Debtor, upon the Effective Date or thereafter, may amend its Articles of Incorporation and Bylaws, at any time, without the need of shareholder approval or notice in order to effectuate the provisions of this Reorganization Plan.

**7.5     Provisions Regarding Corporate Governance and Management of Reorganized Debtor.**

(a)     <u>General</u>.     On the Effective Date, the management, control, and operation of the Reorganized Debtor shall become the general responsibility of the Board of Directors of the Reorganized Debtor.  Notwithstanding anything to the contrary in the Articles of Incorporation or By-laws, until otherwise resolved by the Corporations Board of Directors, the Corporations Officers and Directors shall be entitled to non-cancellable rights of indemnity and advancement to the fullest extent permitted by law.

(b)     <u>Reorganized Debtor's Board of Directors</u>.   The initial Board of Directors of the Reorganized Debtor shall be disclosed not later than thirty (30) days after the Effective Date of the Reorganization Plan.  Each of the members of such initial Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Articles of Incorporation and Bylaws of the Reorganized Debtor, as the same may be amended from time to time.

(c)     <u>Reorganized Debtor's Officers</u>.  The initial officers of the Reorganized Debtor shall be disclosed not later than thirty (30) days after the Effective Date of the Reorganization Plan.  Such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement with Reorganized Debtor and the Articles of Incorporation and Bylaws of the Reorganized Debtor, as the same may be amended from time to time.

**7.6     Corporate Name Change**

On or after the Effective Date of the Reorganization Plan, the Reorganized Debtor may change its corporate name to a name other than QSGI, Inc, or the location of its corporate offices, in accordance with applicable state and federal law.

**7.7     Authority to Enter into Business Combination Transaction**

After the Effective Date, the Reorganized Debtor shall have all rights and authority, subject to (i) the terms of this Reorganization Plan, (ii) the applicable laws of the State of Delaware, and (iii) the Bankruptcy Code, to merge with or acquire, KruseCom, LLC, or such other privately-held company, without further approval by the Bankruptcy Court.

**7.8     Restructuring Transaction Expenses**

While KruseCom, LLC understands that consummation in full of a Restructuring Transaction may not be possible without its agreement to fund certain expenses required to be incurred in connection with such Restructuring Transaction, KruseCom, LLC is not currently willing to consent to payment of such expenses and nothing herein shall require KruseCom, LLC to (i) pursue the Restructuring Transaction or a similar transaction unless KruseCom, LLC expressly agrees to do so in writing, or (ii) incur any expenses in connection with the Restructuring Transaction or a similar transaction unless it expressly agrees in writing to the incurrence of any expense related thereto.  To the extent that KruseCom, LLC subsequently agrees in writing to fund the expenses of the Restructuring Transaction, KruseCom, LLC shall be responsible for all

expenses relating to any auditing and accounting work and the issuance and distribution of the Additional Common Stock on and after the Effective Date pursuant to the Reorganization Plan.  To the extent that KruseCom, LLC subsequently agrees in writing to fund all the expenses of the Restructuring Transaction, KruseCom, LLC shall be responsible for providing the manpower and logistics and payment of the expenses incurred by the Reorganized Debtor in connection therewith.  The Reorganized Debtor is authorized to change its transfer agent if it chooses. To the extent that KruseCom, LLC subsequently agrees in writing to fund all the expenses of the Restructuring Transaction, KruseCom, LLC will undertake the expense and manpower of assisting Reorganized Debtor in preparing and filing any and all reports required to be made by the Reorganized Debtor pursuant to Section 13(a) and 15(d) of the Securities Exchange Act of 1934, as amended. The Estate of the Debtors shall bear no cost in connection with such matters.  To the extent the Reorganized Debtor needs the assistance of the Estate of the Debtors or any other person in connection with any audit of its financial statements or in connection with the preparation of any reports required to be filed by the Reorganized Debtor pursuant to Section 13(a) and 15(d) of the Securities Exchange Act of 1934, as amended, KruseCom, LLC, to the extent that it subsequently agrees in writing to fund the expenses of the Restructuring Transaction, will pay all the reasonable expenses, including attorneys' fees, of such person(s) in assisting the Reorganized Debtor with such matters.

**7.9      Issuance of Securities**

As part of the Plan, subsequent to the approval of the Court,  QSGI as soon as practicable after the merger with KruseCom, Inc. intends to sell up to 10,000,000 shares of its common stock to raise additional operating capital and for other general corporate purposes at prices to be determined at the time of sale.

Any securities issued pursuant to this Reorganization Plan in exchange for Claims or Interests shall be exempt from federal and state laws requiring registration for the offer or sale of securities or registration or licensing of an issuer of, underwriter of or broker or dealer in securities to the fullest extent as provided by Section 1145 of the Bankruptcy Code.

**7.10     Corporate Action**

On the Effective Date, the issuance of Additional Common Stock as provided in the Reorganization Plan, the appointment of officers and directors of the Reorganized Debtor as specified in the Reorganization Plan, and all other corporate actions called for by the Reorganization Plan, including changing the transfer agent, shall be deemed authorized and approved by virtue of the entry of the Confirmation Order in accordance with the Bankruptcy Code and applicable state and federal law and without any requirement of further action by the shareholders, directors or members of the Debtors or the Reorganized Debtor.

**7.11     Liquidation of QSGI-CCSI, Inc. and Qualtech Services Group, Inc.**

QSGI-CCSI, Inc. and Qualtech Services Group, Inc. (the "Liquidated Debtors") shall be deemed to have been liquidated as of the later of the Effective Date, or such time as the all Claims, Causes of Action, and Estate Litigation are fully liquidated ("Liquidation Date"). All Equity Interests in the Liquidated Debtors shall automatically be cancelled and extinguished as of the Liquidation Date without the need for any further action by the Court or any entity

Notwithstanding the foregoing, as soon as practicable after the Effective Date, Liquidated Debtors shall: (i) file their certificates of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable laws of its state of organization, and (ii) complete and file its final federal, state and local tax returns, and pursuant to Section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of its estate for any tax incurred during the administration of the Case, as determined under applicable tax laws. The filing by Liquidated Debtors of their certificates of dissolution shall be authorized and approved in all respects without further action under applicable law,

regulation, order, or rule, including, without limitation, any action by the stockholders or the board of directors of Liquidated Debtors.

On the Liquidation Date, and upon completion of the dissolution process, the Liquidated Debtors shall assign and transfer to Reorganized Debtor, at the discretion of Reorganized Debtor, all of their books and records including, without limitation, computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records maintained by or in the possession of third parties, wherever located. The Reorganized Debtor shall not be obligated to maintain any such books and records and may abandon such documents and data described herein without any liability, the need for notice or Court approval.

**7.12    Cancellation of Equity Interests of Liquidated Debtors**

On the Liquidation Date, except as otherwise provided for herein, the Equity Interests and any other notes, bonds, warrants, options or indentures of Liquidated Debtors evidencing or creating any indebtedness or obligation shall be cancelled and deemed terminated.

**ARTICLE 8**

**DISTRIBUTIONS UNDER THE REORGANIZATION PLAN**

**8.1    Retention of Equity Interests**

As of the Effective Date, all certificates, warrants, options, documents and other instruments underlying Equity Interests, shall be retained by the holders of such Equity Interests.

**8.2    Distribution Date**

Subject to the provisions of Article 6, the Distribution Date shall be a date selected by the Reorganized Debtor as the time reasonably subsequent to completion of the Restructuring Transaction, and completion and final resolution of Disputed Claims, Causes of Action and Estate Litigation.  At such time, the Reorganized Debtor shall distribute, on a pro-rata basis, the Additional Common Stock in the Reorganized Debtor consistent with the provisions of this Reorganization Plan.

**8.3    Record Date for Distributions**

The Reorganized Debtor shall have no obligation to recognize any Claim occurring or arising after the Effective Date ("Record Date").  In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim Filed with respect thereto or on the Debtors' Schedules as the holder of the Claim as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtors or Reorganized Debtor as of the Record Date.

**8.4    Delivery of Distributions**

**8.4.1    General Provisions; Unclaimed Property**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Beneficiaries shall be made by the Reorganized Debtor at (i) the address of each Beneficiary as set forth in the Debtors' Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Beneficiary or (ii) the last known address of such Beneficiary if no Proof of Claim is Filed or if the Reorganized Debtor has been notified in writing of a change of address.   If any Beneficiary's Distribution is returned as Unclaimed Property, no further Distributions to such

Beneficiary shall be made unless and until the Reorganized Debtor is notified of such Beneficiary's then current address, at which time all missed Distributions shall be made to such Beneficiary.

All claims for Unclaimed Property must be made on or before one (1) year after the Effective Date, after which date the Unclaimed Property shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtor free of any restrictions thereon, and the Claims of any Beneficiary, or successor to such Beneficiary, shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

In the event of a timely claim for Unclaimed Property, the Reorganized Debtor shall deliver the Unclaimed Property to the Beneficiary pursuant to the Reorganization Plan. Nothing contained in the Reorganization Plan shall require the Debtors or Reorganized Debtor, or their respective Professionals, to attempt to locate any Beneficiary.

**8.5     No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no Distribution provided hereunder shall be made until the Disputed Claim is Allowed.

**8.6     Corporate Action.**

All matters provided for under the Plan involving corporate structure of the Debtor or the Reorganized Debtor or any corporate action to be taken by or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Managers of the Debtor or the Reorganized Debtor.

**8.7     Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.

**8.8     Effectuating Documents; Further Transactions.**

The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, deeds, releases, mortgages and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

**8.9     Preservation of Causes of Action.**

Except as otherwise provided in the Plan or the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtor will retain for its own benefit and may pursue, not pursue, settle, release, or enforce, in its sole and absolute discretion, all claims, rights or Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, including

Causes of Action arising under Chapter 5 of the Bankruptcy Code. The Debtor is not currently in a position to express an opinion on the merits of any Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. In the event of recovery by the Debtor or the Reorganized Debtor, the funds will be deposited into Debtor's bank account and will be utilized to pay ongoing operating expenses.

## ARTICLE 9

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1   Approval of Rejection**

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of all executory contracts and unexpired leases that have not already been assumed, assigned, and/or rejected by the Debtors, or that are the subject of a pending motion to assume or reject as of the Effective Date.   Pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that existed between the Debtor and another Person or Entity as of the Petition Date shall be deemed rejected by the Debtor as of the later of sixty (60) days after the Effective Date or December 1, 2010 (collectively the "Rejected Contracts"), except for key insurance policies and other significant contracts.   A party may request in writing from Debtors' counsel, confirmation as to whether that party's contract is being rejected or accepted by the Debtor within ten (10) days from the date of approval of Debtor's proposed Disclosure Statement in order to file a proof of claim consistent with the Plan and Disclosure Statement.

**9.2   Rejection Claims**

If the rejection of an executory contract or unexpired lease pursuant to the Reorganization Plan and the Confirmation Order results in damages to the non-Debtor party to such contract or lease, any claim for such damages, if not heretofore evidenced by a timely Filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors and Reorganized Debtor, or their properties, successors, and assigns, unless a Proof of Claim is Filed and served upon the Debtors, and their legal counsel, on or before thirty (30) days after the Effective Date.

## ARTICLE 10

### RELEASES, INJUNCTION, AND WAIVER OF CLAIMS

**10.1   Release**

With respect to post-petition actions, on the Effective Date, the Debtors and all persons, interested parties and Entities shall be conclusively presumed to have released the following parties (but solely to the extent set forth below): all Professionals, KruseCom, LLC, and Reorganized Debtor (each of the foregoing, a "Released Party" and together, the "Released Parties"), from any Claim or Cause of Action based on, arising from, or in any way connected with, (A) the Case (including, without limitation, any actions taken and/or not taken with respect to the administration of the Estate or the operation of the business of the Debtors); (B) the Reorganization Plan or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Reorganization Plan, except to the extent any such claim or Cause of Action against any Released Party arises solely as a direct result of that Released Party's fraud, gross negligence or willful misconduct. The Debtors and the Reorganized Debtor also release KruseCom, LLC from any and all Claims and causes of action, know or unknown, arising out of KruseCom's relationship to Debtors.

**10.2    Release of Released Parties by Holders of Claims**

On and after the Effective Date, each holder of a Claim against the Debtors shall be deemed to have released unconditionally all the Released Parties from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except to the extent necessary to enforce the provisions of the Reorganization Plan.

**10.3    Discharge of Claims and Termination of Equity Interests**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and the Reorganized Debtor from any and all Debts and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and the Reorganized Debtor, and their respective successors or assigns, shall be discharged from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) of the Holder of a Claim based on such Debt has voted to accept the Plan.  As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect.   In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtor, pursuant to Section 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability or Debt. Notwithstanding the foregoing, the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

**10.4    General Injunction.**

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interest, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding

against the Debtor or the Reorganized Debtor or their respective Property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, or their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation to the Debtor or the Reorganized Debtor; (e) commencing or continuing, in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order, or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or Reorganized Debtor under the Plan and the documents executed in connection therewith. The Debtor and the Reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. This provision is cumulative with the Debtor's other legal rights and remedies.

Notwithstanding the foregoing, the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

**10.5    Term of Certain Injunctions and Automatic Stay**.

Except as otherwise ordered by this Court, all injunctions or automatic stays provided for in the Reorganization Case pursuant to section 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

**10.6    No Liability for Tax Claims.**

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtor or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) of the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 11

## RETENTION OF JURISDICTION

**11.1    Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Case, the Reorganization Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, objections to Claims, including Causes of Action, Estate Litigation, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim, Disputed Claim, Cause of Action or Estate Litigation on behalf of the Debtors or their Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professionals for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Reorganization Plan, and all contracts, instruments, releases and other agreements or documents created in connection with the Reorganization Plan;

(h) To consider any modifications to the Reorganization Plan, to cure any defect or omission, or reconcile any inconsistency, in the Reorganization Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Reorganization Plan and to implement and effectuate the Reorganization Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Reorganization Plan, or any person's or Entity's obligations incurred in connection with the Reorganization Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Reorganization Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Case (whether or not the Case has been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Reorganization Plan, or any Estate obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Reorganization Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Reorganization Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of

the Reorganization Plan, or the enforcement of any rights, remedies, or obligations created under the Reorganization Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matters if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or Title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, releases, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Reorganization Plan;

(t) To recover all Assets of the Debtors' Estate (excepting those Assets transferred pursuant to the Sale Order); and

(u) To enter a final decree closing the Case.

**11.2    Modification of the Reorganization Plan**

Any modification to the Reorganization Plan shall be consistent with the terms, conditions and requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Reorganization Plan provides otherwise, the rights, duties, and obligations arising under the Reorganization Plan, and the instruments, agreements, and other documents executed in connection with the Reorganization Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

**12.2    Notices**

To be effective, all notices, requests, and demands under the Reorganization Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Estate /Reorganized Debtor:**

**Mr. Marc Sherman**
**400 Royal Palm Way, Suite 302**
**Palm Beach, Florida 33480**
**T: (561) 629-5713**
**F: (561) 629-5716**

and

**Counsel for the Debtor/Reorganized Debtor**:

**Michael A. Kaufman, Esq.**
**Michael A. Kaufman, P.A.**
**1655 Palm Beach Lakes Boulevard, Suite 1012**
**West Palm Beach, Florida 33401**
**Telephone: (561) 478-2878**
**Facsimile: (561) 584-5555**
**Email: michael@mkaufmanpa.com**

## 12.3    Further Documents and Actions

The Debtors and/or Reorganized Debtor shall execute, and are authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Reorganization Plan, and to consummate the transactions and transfers contemplated by the Reorganization Plan. The Debtors, Reorganized Debtor and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Reorganization Plan in order to implement the terms of the Reorganization Plan or to effectuate the Distributions under the Reorganization Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

## 12.4    Relationship Between the Reorganization Plan and Disclosure Statement

To the extent that the Reorganization Plan is inconsistent with the Disclosure Statement, the provisions of the Reorganization Plan shall control.

## 12.5    Reservation of Rights

If the Reorganization Plan is not confirmed by a Final Order or any other reason, the rights of all parties in interest in the Case, including the Debtors, are and will be reserved in full. Any concessions or settlements reflected herein (to the extent they do not arise by another document, agreement, or order), are made for purposes of the Reorganization Plan only, and if the Reorganization Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

## 12.6    Post confirmation Date Fees and Expenses

After the Effective Date, the Debtors and/or Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay (in accordance with the provisions set forth in Articles 3 and 6, herein) the reasonable fees and expenses incurred by any Professional retained by the Debtors and/or the Reorganized Debtor in connection with services performed on the administration of the Estate, implementation and consummation of the Reorganization Plan, the liquidation of the Debtors' Assets, Causes of Action, Estate Litigation, the Claims objection/reconciliation process and any other matters as to which the retained Professionals may be engaged.  The fees and expenses of Professionals shall be paid within thirty (30) days after submission of a detailed invoice therefore submitted to Debtors and/or Reorganized Debtor.  If the Debtors and/or Reorganized Debtor dispute the reasonableness of any such invoice and the parties cannot amicably resolve the dispute, the Debtors and/or Reorganized Debtor shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

## 12.7    Binding Effect

The rights, benefits, and obligations of any person or Entity named or referred to in the Reorganization Plan, or whose actions may be required to effectuate the terms of the Reorganization Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such person or Entity, including but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code.  The Confirmation Order shall provide that the terms and provisions of the Reorganization Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Reorganization Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Respectfully submitted,

QSGI, INC.
Debtor and Debtor In Possession

Dated: October  8, 2010                      By: _____
       West Palm Beach, Florida                   Marc Sherman, CEO

QSGI-CCSI, INC.
Debtor and Debtor In Possession

Dated: October 8, 2010                       By: _____
       West Palm Beach, Florida                   Marc Sherman, CEO

Qualtech Services Group, INC.
Debtor and Debtor In Possession

Dated: October 8, 2010                       By: _____
       West Palm Beach, Florida                   Marc Sherman, CEO